UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY J. SOLOC,

        Plaintiff,

vs.                               Case No. 2:08-cv-405-FtM-29SPC

DALE TODD,

        Defendant.[1]
_____

**OPINION AND ORDER**

This matter comes before the Court upon review of Defendant Dale Todd's Motion to Dismiss (Doc. #20, Motion). Plaintiff filed a Response to the Motion (Doc. #21, Response). This matter is now ripe for review.

**I.**

Plaintiff, Anthony J. Soloc, who is proceeding *pro se* and is currently confined within the Florida Department of Corrections, has pending before the Court a civil rights complaint form filed pursuant to 42 U.S.C. § 1983 (Doc. #1, Complaint) in connection with events that occurred, while Plaintiff was confined at Charlotte Correctional Institution. See generally Complaint. In particular, the Complaint sets forth the following factual

---

[1] The Court previously dismissed the following named Defendants in this action: the Florida Department of Corrections, Paul Decker, Warden Johnson, and the State of Florida. See Order of Partial Dismissal dated June 30, 2008 (Doc. #10). Consequently, this case remains pending against only Defendant Todd. Id.

allegations, which are assumed to be true for purposes of this Motion.

> On 8/31/07 [,] while working on food service for Charlotte Correctional Institution [,] I [,] Anthony J. Soloc [,] was call[ed] out for no apparent reason by Officer Dale Todd and escorted by Officer Todd to an area evidently where no cameras were located for a so called consultation. I was told to face the wall and put my hands behind my back and did so. The next thing I know I was being grabbed and thrown to the ground on my belly by Officer Todd. While Officer Todd held me down [,] I was kicked and kneed in the face and head area, by other officers who I don't know. Also kicked in the right rib cage by Officer I don't know while Officer Todd was holding me down and yelling for the benefit of the captain and/or Lieut[enant] who were coming our of their office "stop resisting." I was then taken to a Punta Gorda Emergency Hospital for treatment. To this day I have sinus trouble and my ribs have pain. I also get headaches in an area of my head I never get them before. This same day [,] 8/31/07 [,] I was transported to Florida State Prison and placed on maximum management.

Id. at 8-9. Liberally construing the Complaint, the Court finds that the Complaint alleges an Eighth Amendment violation stemming from an alleged excessive use of force by Defendant Todd that occurred on August 31, 2007. As relief, Plaintiff requests that "disciplinary action" be taken against Defendant Todd, "fired if possible." Complaint at 10. Additionally, Plaintiff seeks $800,000 in unspecified monetary damages. Id.

Plaintiff attaches to his Complaint the following exhibits (Doc. #1-2). A copy of the "Charging Disciplinary Report" dated September 12, 2007, charging Plaintiff with unarmed assault of Officer Todd on August 31, 2007 at Log #510-071526. Doc. #1-2 at 9-10. Plaintiff filed a Request for Administrative Appeal to the

Warden regarding "D.R. #510-071526" dated September 23, 2007. Id. at 3. In the section entitled "Inmate Grievance," Plaintiff complains that "[t]he D.R. Team has found me guilty based upon an inappropriate standard of proof in violation of 33-601.307, failure to present evidence to support a finding of guilty, also in violation of 33-601.308, for finding me guilty based only on a statement made by Officer Todd." Id. Further, Plaintiff complained that Officer Todd "has a past history and record of being a disciplinary problem" and he has had no disciplinary problems since his incarceration. Id. As relief, Plaintiff asks that his "D.R. be dismissed and stricken from the record." Id.

In the response denying the grievance dated October 4, 2007, officials advised Plaintiff that he has "not provided evidence to substantiate [his] allegation that [Office Todd] furnished false information." Id. at 4. Further, officials pointed out that it was the Team's responsibility to "determine the credibility of the witnesses." Id. Additionally, officials noted that "[a]ll evidence was reviewed . . . which included photos of the officer's injuries." Id. Last, the response stated that Plaintiff's "prior disciplinary history has no bearing on [his] guilty or innocence." Id.

Plaintiff also submitted an "Inmate Request" stamped form DC6-236 on September 25, 2007, in which Plaintiff asks:

> What caused me to be put on CM1? I have no DR history. I was beat up by staff at Charlotte and brought to an outside hospital. No witnesses.

-3-

Id. at 1.  In response to the Inmate Request, officials advised Plaintiff that "You received a copy of you CM report which states the reason you were brought up for CM1.  You may appeal the decision of the ICT through the formal grievance process."  Id. Attached to the response is a copy of the Disciplinary Hearing Worksheet prepared in connection with  Plaintiff's disciplinary hearing held on September 17, 2007, concerning the August 31, 2007 incident.  Id. at 2.  The Disciplinary Hearing Worksheet sets forth the basis for the decision and indicates that Plaintiff lost 16 days gain time and was subject to disciplinary confinement for a period not to exceed 60 days.  Id.

On October 10, 2007, Plaintiff submitted a Request for Administrative Appeal to the Secretary, Florida Department of Corrections.  Id. at 5.  Plaintiff again asked that his "D.R. be dismissed."  Id.  Plaintiff requested that the Secretary have the "fixed camera film" reviewed as "proof" of his "innocence." Plaintiff objected to the fact that the "officer's statement" was deemed "more credible" by the hearing team.  Plaintiff denied that he was "simply restrained" but averred that he "was beat so bad [he] was brought to an outside hospital to be treated."  Id.

In response, the Secretary advised Plaintiff that there was "no camera in the area of the incident."  Id. at 6.  The response further advised Plaintiff that he has "not presented evidence or information to warrant overturning the disciplinary report" and denied Plaintiff's administrative appeal.  Id.   The response also

mentioned that "[t]he use of force was previously referred [to] the Office of the Inspector General, Case 07-5-2639 and 2007-510-0172." Id.[2]

Defendant seeks dismissal of the Complaint on the grounds, *inter alia*, that as evidenced by the grievance forms attached to the Complaint, Plaintiff has failed to exhaust his administrative remedies that are available within the Florida Department of Corrections (the "Department") in connection with the subject matter of his Complaint. Motion at 3. In particular, Defendant Todd argues that the grievance forms and corresponding responses demonstrate that Plaintiff only grieved his disciplinary review hearing and his subsequent placement on close management that resulted from the August 31, 2007 incident. Id. at 9. Defendant further points out that Plaintiff did not exhaust the alleged excessive use of force by Defendant Todd, which is the subject of his Complaint. Id. at 9-10.

Plaintiff does not allege that he submitted any other grievances that he filed in connection with the August 31, 2001 incident. Instead, Plaintiff characterizes Defendant's exhaustion defense as "flimsy," arguing that "the fact that [Plaintiff] grieve[d] being placed on CM1 is essentially grieving everything

---

[2]The Court notes that Rule 33-601.303 requires that the Inspector General be notified when incidents in which "it appears that the laws of the state have been violated" so that the State Attorney may be contacted for prosecution, if appropriate. Here, it appears that the charge against Plaintiff, unarmed assault, would qualify as a violation of state law.

else." Response at 1. Plaintiff acknowledges that he "didn't mention being badly beat" in his appeal of his first grievance, but contends that the warden "would know this from the first grievance." Id.

**II.**

The Prison Litigation Reform Act (hereinafter "PLRA"), which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, provides as follows:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**

42 U.S.C. § 1997e(a)(emphasis added).

The PLRA's exhaustion requirement is intended to: (1) "eliminate unwarranted federal-court interference with the administration of prisons," (2) "'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" and (3) "'reduce the quantity and improve the quality of prisoner suits.'" Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006)(quoting Porter v. Nussle, 534 U.S. 506, 524-25 (2002)) (internal footnote and citations omitted). As a result of the PLRA, consideration of "[e]xhaustion is no longer left to the discretion of the district court, but is

mandatory." Woodford, 126 S. Ct. at 2382; (referencing Booth v. Churner, 532 U.S. 731, 739 (2001)). See also Bryant v. Rich, 530 F.3d 1368, 1372 (11th Cir. 2008). Additionally, the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they involve excessive force or some other wrong doing. Woodford, 126 S. Ct. at 2382; Nussle, 534 U.S. at 532; Booth, 532 U.S. at 741. Inmates, however, "are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 127 S. Ct. 910, 921 (2007). Rather, pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense. Id.

"[T]he PLRA exhaustion requirement requires **full** and **proper** exhaustion."[3] Woodford, 126 S. Ct. at 2387 (emphasis added). Accordingly, in Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005), the Eleventh Circuit, noting the "policies favoring exhaustion," held that the PLRA contains a procedural default component which arises where an inmate fails to avail himself in a timely fashion of an institution's administrative process. Id. at 1156, 1159, cert. denied, Johnson v. Meadows, 126 S. Ct. 2978 (2006). Thus,

---

[3]"[A] prisoner should include as much relevant information as he reasonably can in the administrative grievance process." Brown v. Sikes, 212 F.3d 1205, 1207-1208 (11th Cir. 2000).

where an inmate's grievance is denied because of a failure to timely pursue all of administrative remedies, that inmate is barred from bringing a federal action on that claim because the inmate cannot demonstrate full exhaustion of remedies. See id. at 1158.

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court. Bryant v. Rich, 530 F.3d at 1374. Thus, "[e]ven though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits." Id. (footnote, internal quotations, and citations omitted). The defense of exhaustion is properly raise in a motion to dismiss as a "matter of judicial administration." Id. 1375-76. Thus, the court is permitted to look beyond the pleadings to decide disputed issues of fact in connection with the exhaustion defense. Id. at 1377 n.16.

### III.

The Department is statutorily mandated to implement "rules relating to . . . grievance procedures which shall conform to 42 U.S.C. § 1997e." Fla. Stat. § 944.331. As such, the Department has established an inmate grievance procedure for all inmates in their custody. Florida Administrative Code, Chapter 33-103.

Upon review of the Complaint, the exhibits attached thereto, and the applicable rules governing the inmate grievance procedure within the Department, the Court finds that Plaintiff has not exhausted the Department's grievance procedure concerning the subject matter of the instant action. It is clear from a review of the various exhibits attached to Complaint that Plaintiff was grieving the fact that he was issued a disciplinary report and the fact that the disciplinary team found him guilty of the offense charged. The fact that Plaintiff was appealing the disciplinary team's finding is also evidenced by the fact that Plaintiff initiated the first step in the appeal process by filing the formal grievance directly within the warden within 15 days of the disciplinary team's findings as required by Rule 33-601.[4] Indeed, Plaintiff does not complain of the alleged beating in his appeal to the Warden. <u>Id.</u> at 3. While Plaintiff makes a reference to being beaten in his appeal to the Secretary, the beating is not the subject of the grievances, but instead is referenced peripherally by Plaintiff as evidence of a "cover up." <u>See</u> Doc. 1-2 at 5.

Although Plaintiff complains of the beating in his Inmate Request dated September 25, 2007, the Request does not constitute an informal grievance, which Plaintiff would have been required to

---

[4]The disciplinary hearing was held on September 17, 2007, and Plaintiff filed his formal appeal with the warden on September 23, 2007.

file to initiate the grievance process on a claim of excessive use of force.[5] In particular, Rule 33-103.005, entitled "Informal Grievance" provides:

> (1) Inmates <u>shall utilize the informal grievance process prior to initiating a formal grievance except in the case of</u> an emergency grievance, a grievance of reprisal, a grievance of a sensitive nature, a grievance alleging violation of The Americans with Disabilities Act, a medical grievance, a grievance involving admissible reading material, a grievance involving gain time governed by Rule 33-601.101, F.A.C, Incentive Gain Time, a grievance challenging placement in: close management and subsequent reviews, grievances regarding the return of incoming mail governed by subsection 33-210.101(14), F.A.C., or <u>a grievance involving disciplinary action</u> . . .
>
> (2) When submitting an informal grievance, the inmate shall use Form DC6-236, Inmate Request/ and shall -
>
>> (b) On top of the page, or on the same line as the word "Request", or on the first line of the request section <u>the inmate shall print the words "Informal Grievance."</u> Failure to do this will cause the request to be handled routinely and it will not be considered an informal grievance. This will also cause the form to be unacceptable as documentation of having met the informal step if it is attached to a formal grievance at the next step.

Fla. Admin. Code, Rule 33-103.005 (emphasis added). Consequently, the Court does not construe Plaintiff's Inmate Request submitted on Form DC6-236 as an informal grievance because Plaintiff did not print the words "Informal Grievance" on the form as required by the

---

[5]Defendant Todd refers to the Inmate Request form as Plaintiff's "informal grievance." Motion at 9. For the reasons set forth in this Order, the Court does not find that the Inmate Request constitutes an informal grievance.

rules.  Further, because the Inmate Request form was submitted by Plaintiff after he submitted his formal grievance,[6] the Inmate Request form cannot be construed as an informal grievance since it did not precede the date of the formal grievance.

Based upon the foregoing, the Court finds that Plaintiff did not grieve the alleged beating by Defendant Todd, which is the subject of the Complaint *sub judice*.  Consequently, Plaintiff did not exhaust the administrative remedies that are available within the Department.  Thus, the Court will dismiss this action pursuant to 42 U.S.C. § 1997e.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  Defendant's Motion to Dismiss (Doc. #20) is **GRANTED,** and Plaintiff's Complaint (Doc. #1) is **DISMISSED without prejudice.**

2.  The **Clerk of Court** shall: (1) terminate any pending motions; (2) enter judgment accordingly, and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this  16th  day of June, 2009.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record

---

[6] Plaintiff submitted his Inmate Request form on September 25, 2009 and submitted his formal grievance on September 23, 2007.